BRUNO *v.* DETROIT INSTITUTE OF TECHNOLOGY

1. Contracts—Employment Contracts—Rate of Compensation—
Parties' Intent.
   The rate of compensation or a definite method for ascertaining
   the rate of compensation must, as a general rule, be included
   as a part of an employment contract; however in this state,
   employment contracts are interpreted the same as other
   contracts, the main object being to effect the intention of the
   parties.

2. Words and Phrases—Review.
   "Review" means to examine again or to go over or examine
   critically or deliberately.

3. Contracts—Employment Contracts—Rate of Compensation
   —Reviewable Compensation.
   A contract of employment appointing a teacher to a position
   for a two-year period, the salary for the first year being fixed
   at $7,500 and the salary for the second "to be reviewed", did
   not fail, as a matter of law, to be a contract, even though it
   was contended that the rate of compensation was not specified
   for the second year, where for several years plaintiff teacher
   had been offered and had accepted yearly contracts with raises
   each year, because the word "reviewed" as interpreted in refer-
   ence to the conduct of the parties meant that the rate of com-
   pensation was at least $7,500 in both years with the possibility
   of a raise in the second year.

Appeal from Wayne, Edward S. Piggins, J.   Sub-
mitted Division 1 June 17, 1971, at Detroit.  (Docket
No. 9350.)   Decided September 27, 1971.   Leave to
appeal denied, 386 Mich 782.

References for Points in Headnotes
[1] 53 Am Jur 2d, Master and Servant § 73.
[2, 3] 53 Am Jur 2d, Master and Servant § 71 *et seq.*

Complaint by Vincent J. Bruno against the Detroit Institute of Technology for breach of employment contract. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Zwerdling, Miller, Klimist & Maurer,* for plaintiff.

*Cross, Wrock, Miller & Vieson* (by *W. Robert Chandler*), for defendant.

Before: T. M. BURNS, P. J., and HOLBROOK and McGREGOR, JJ.

T. M. BURNS, P. J. Plaintiff, an associate professor of economics, brought suit alleging that defendant had breached an employment contract for the academic year 1966–1967. The trial court found for the defendant, and plaintiff brings this appeal as of right.

Plaintiff was first employed by the defendant for the academic year 1959–1960 as an assistant professor of economics and finance at a salary of $5,800. Prior to the academic year 1965–1966, defendant had offered plaintiff yearly contracts with an increase in salary.

The contract of April 19, 1965, offered a two-year appointment with the salary increased to $7,500, the salary for the second year to be reviewed at a later date.

On April 15, 1966, defendant sent plaintiff a letter of appointment offering the salary the same as the previous year, $7,500. There was a series of verbal and written communications discussing the salary which culminated in the defendant's letter of August 29, 1966, which dismissed plaintiff because of an alleged lack of contract.

Plaintiff then brought suit alleging breach of contract. The trial court found, as a matter of law, that there was no contract because plaintiff and defendant had never reached agreement on the amount of salary for the year 1966–1967 and, therefore, no breach was possible.

The contract in question provided:

"Mr. Vincent J. Bruno
College of Business Administration
The Detroit Institute of Technology
Detroit, Michigan
"Dear Mr. Bruno:

"I am pleased to inform you that upon the recommendation of Mr. William M. Kessel, Acting Dean, College of Business Administration, you have been appointed Associate Professor of Economics and Chairman, Economics Department in the College of Business Administration, for the academic years 1965–66 and 1966–67. Salary for the academic year 1965–66 will be $7,500. Salary for the academic year 1966–67 will be reviewed at a later date.

"Validation of this offer and the terms as stated in the attached memorandum to members of the General Faculty Council of the Detroit Institute of Technology is contingent upon receipt of your signed acceptance by this office not later than April 30, 1965. The copy is for your records.
                              "Sincerely yours,
                              "Dewey F. Barish."
(*Signed*)
Vincent J. Bruno
April 28, 1965.

It is basic, of course, that compensation is an essential ingredient of an employment contract, and the compensation must be ascertainable if such employment contract is to be enforced. As a general rule, the rate of compensation or a definite

method for ascertaining it must be included as part of the contract.[1] In Michigan, however, employment contracts are interpreted the same as other contracts:

"Contracts of employment are subject to the same rules of construction as other contracts. Accordingly, the main object to be arrived at in construing an employment contract is the intention of the parties, and effect is to be given to that intention whenever it can be done without doing violence to the obvious meaning of the language employed by the parties in making the agreement. Where the terms of an employment contract are in doubt, it is proper to look, in its interpretation, at the conduct of the parties themselves with reference thereto and the manner in which they have treated the contract, and an employment contract will be construed most strongly against the party preparing it. The fact that the application of the plain terms of the contract may appear to inflict hardship upon the employer does not warrant the remaking of the contract by the court."[2]

This Court, in the case of *Stark* v. *Budwarker, Inc.* (1970), 25 Mich App 305, spoke at length on the interpretation of contracts and at p 313 stated:

"The cardinal rule of construction is that we seek to determine and to give effect to the intention of the parties."

Up to the time of April 19, 1965, the defendant had offered, and the plaintiff had accepted, a yearly contract for a specified sum. Each year there had been an increase in that sum.

In the April 19, 1965, contract the defendant gave a definite offer of employment for a two-year pe-

---

[1] See 53 Am Jur 2d, Master and Servant, § 16, p 94.
[2] 10 Michigan Law & Practice, Employment, § 4, p 495.

riod; the salary being definite for the first year, and the salary for the second year to "be reviewed at a later date".

Some definitions of the word "review" are: (1) to examine again; and (2) to go over or examine critically or deliberately. Webster's Seventh New Collegiate Dictionary (G. & C. Merriman Company, 1969), p 736. It is our opinion, given defendant's practice of giving the plaintiff annual raises, that the contract provided for at least a $7,500 salary for both years with the possibility of plaintiff receiving a raise in the second year. This would seem to be the common understanding of the word "reviewed" in relation to the parties' prior practice regarding plaintiff's salary.

Since our interpretation is that the writing dated April 19, 1965, did bind the parties, the trial court's decision that the parties did not have a contract is reversed. It is also the decision of this Court that the defendant did breach the contract and is liable to the plaintiff for at least the one year's salary of $7,500.

Plaintiff has, however, requested damages in excess of the one year's salary based upon the tenure policy presently in effect at the Institute. Since this issue was not briefed on appeal, we will remand to the trial court for determination of any damages in excess of the one year's salary.

Reversed and remanded.

All concurred.